# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

May 5, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MARY ANN ROBERTS,**
**Claimant Below, Petitioner**

**vs.)   No. 16-0545** (BOR Appeal No. 2050954)
                    (Claim No. 2003001392)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**AFFORDABLE ELDERLY CARE PROVIDERS, INC.,**
**Employer Below, Respondent**

**AND**

**MARY ANN ROBERTS,**
**Employer Below, Petitioner**

**vs.)   No. 16-0551** (BOR Appeal No. 2050394)
                    (Claim No. 2010130461)

**MARY ROBERTS,**
**Claimant Below, Respondent**

1

# MEMORANDUM DECISION

These consolidated appeals arise out of two Orders by the Workers' Compensation Board of Review concerning the entitlement of Mary Roberts to medical benefits, a reopening of her claim for additional permanent partial disability and the addition of additional conditions to her claim.[1]

In Case Number 16-0545, Petitioner Mary Ann Roberts, by M. Jane Glauser, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia Office of the Insurance Commissioner, by Noah A. Barnes, its attorney, filed a timely response. The issue on appeal is whether Ms. Roberts is entitled to the additional medical treatment as well as the addition of post-laminectomy/failed back syndrome to the claim. On December 5, 2014, the claims administrator denied her petition to reopen the claim for medical treatment and denied a request to add post-laminectomy/failed back syndrome to the claim. The Office of Judges affirmed the decision in its November 2, 2015, Order. The Board of Review affirmed the Order on May 11, 2016.

In Case Number 16-0551, Petitioner Mary Ann Roberts, by Lucinda Fluharty, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Mary Roberts, by M. Jane Glauser, her attorney, filed a timely response. The issue on appeal is whether Ms. Roberts is entitled to additional impairment and medical benefits. On October 28, 2013, the claims administrator decision denied reopening of the claim for additional impairment. On October 28, 2013, it denied a lumbar MRI. Finally, on October 4, 2013, the claims administrator denied a lumbar MRI, chiropractic treatment, and a referral to Samy Sakla, M.D. The Office of Judges affirmed the claims administrator's decisions in its March 27, 2015, Order. The Board of Review affirmed, in part, and reversed, in part, the Order on May 11, 2016. The Board of Review denied the reopening for additional impairment but authorized a lumbar MRI, chiropractic visits, and the referral to Dr. Sakla. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Roberts, a home health worker, was injured in the course of her employment on March 1, 2002. The claim was held compensable for lumbar sprain/strain and sciatica. On June 4, 2004, the claims administrator authorized a hemilaminectomy, microdiscectomy, and foraminotomy at L5-S1. The claims administrator approved a second surgery, a

---

[1] On July 7, 2016, Ms. Roberts requested by written motion that this Court consolidate appeal numbers 16-0545 and 16-0551. Upon consideration, the Court granted Ms. Roberts's motion and consolidated the two appeals.

hemilaminectomy at L4-5, on August 4, 2005. She was also treated thereafter with lumbar spine injections. Sushil Sethi, M.D., performed an independent medical evaluation on October 14, 2005, in which he noted that Ms. Roberts had undergone lumbar surgeries. She currently complained of low back pain. Dr. Sethi opined that her current pain was due to her congenital condition of retrolisthesis. He found she had reached maximum medical improvement and recommended 13% impairment. On August 8, 2008, Dr. Sakla indicated in a treatment note that Ms. Roberts was seen for follow-up for left side low back pain. She reported that her pain had improved at least 95%. Dr. Sakla therefore recommended deferring further injections unless needed.

Ms. Roberts suffered a second work-related lower back injury on November 17, 2009, while helping a client into the shower. Dr. Sakla noted on December 28, 2009, that Ms. Roberts presented on examination with pain for the last four weeks. She reported that she had significant relief following her first injury and was feeling 90% better from sacroiliac injections. This relief lasted until the November 17, 2009, recurrence. Ms. Roberts submitted a report of injury stating that she was injured while helping a client into the shower. The diagnosis was listed by Gerald Booth, D.C., as lumbosacral sprain/strain and it was noted that the injury aggravated a pre-existing lumbar sprain/strain. An MRI taken April 27, 2010, showed minimal disc bulging from L1-L4. Three was a mild to moderate bulge at L4-5 with a radial tear along with bilateral facet hypertrophy and marked impingement. There was moderate diffuse disc bulging at L5-S1 with bilateral facet hypertrophy and moderate to severe impingement.

On March 4, 2011, Victoria Langa, M.D., noted in a report that Ms. Roberts stated her back pain and left lower extremity numbness/tingling had worsened since the November 17, 2009, injury. The diagnoses were listed as chronic lumbar post-laminectomy/failed back syndrome, underlying age-related diffuse lumbar degenerative disc disease/degenerative joint disease, chronically symptomatic left sacroiliac joint, and diabetic peripheral neuropathy involving both feet. Dr. Langa opined that the current complaints ultimately related to the March 1, 2002, injury. It was her opinion that Ms. Roberts's symptoms were aggravated by the November 17, 2009, injury.

In a May 11, 2011, letter, Dr. Booth requested a consultation with Dr. Sakla. On July 11, 2011, he stated that Dr. Sakla recommended left sacroiliac injections. Dr. Booth agreed with the treatment plan. Dr. Sakla's June 8, 2011, treatment notes indicate Ms. Roberts was experiencing back pain for the prior nineteen months due to a work injury sustained on November 17, 2009. He diagnosed her with lumbar sprain and sprain of the sacroiliac region. He recommended that she receive sacroiliac injections to help with the pain and requested that the claims administrator authorize the injections.

A July 25, 2011, Office of Judges' Order affirmed a denial of a request for chiropractic treatment in the November 17, 2009, claim. It found that Ms. Roberts's pain from the 2002 injury had become much less severe approximately a year before the 2009 injury occurred. It held that she sustained a compensable injury on November 17, 2009. The claims administrator held the claim compensable for lumbar sprain and sacrum sprain.

In an August 10, 2011, chiropractic statement, Dr. Booth stated that Ms. Roberts needs chiropractic care. He listed both the 2002 and 2009 injuries on the form but stated that it was reasonable and necessary because she suffered a sprain/strain on November 17, 2009, that was determined to be a new injury. In a diagnosis update it appears that he requested that lumbar sprain/strain and sacroiliac sprain/strain be added to both claims.

In an independent medical evaluation on September 26, 2011, Dr. Sethi found that Ms. Roberts's sprain was self-limiting and should have resolved in six to twelve weeks. She had received sufficient treatment. He opined that her sacroiliac joint symptomatology appeared to be chronic as she was already receiving treatment in 2007. She had reached maximum medical improvement for the November 17, 2009, injury and he assessed 5% impairment. Bruce Guberman, M.D., performed an independent medical evaluation on January 5, 2012. Dr. Guberman diagnosed post-traumatic acute and chronic lumbosacral strain and L5-S1 disc disease with left sided radiculopathy. He noted that Ms. Roberts originally injured her lower back on March 1, 2003, and underwent two surgeries. Following her surgeries she did well and had no significant limitations. Following her November 17, 2009, injury she has had increased pain and decreased range of motion. Dr. Guberman found that Ms. Roberts had reached maximum medical improvement. He assessed 22% lumbar spine impairment. Ms. Roberts had previously received a 13% permanent partial disability award award which was subtracted from the range of motion impairment for a total of 9% permanent partial disability for the November 17, 2009, injury. He placed her in Lumbar Category II of West Virginia Code of State Rules § 85-20-C (2006) and adjusted the impairment to 8%.

On January 9, 2012, the Office of Judges denied a request for sacroiliac injections in the 2002 claim because it found that Dr. Sakla opined that the injections were necessitated by the 2009 injury. In a physician review, Rebecca Thaxton, M.D., recommended denying the request for authorization of SI joint injections. She found that the treatment was for unrelated, pre-existing conditions. The Office of Judges reversed a claims administrator's decision and approved authorization for SI joint injections on August 29, 2012, for the November 17, 2009, injury.

In an October 2, 2012, independent medical evaluation, Dr. Langa noted that Ms. Roberts had reached maximum medical improvement for her November 17, 2009, lumbar/sacral/sacroiliac sprains. No additional impairment was deemed necessary. Dr. Langa disagreed with Dr. Guberman's assessment, particularly his methodology. She also disagreed with his range of motion impairment calculations as Ms. Roberts showed significantly better measurements on examination by Dr. Langa. Finally, Dr. Langa disagreed that there was any evidence of S1 motor radiculopathy.

In a February 1, 2013, letter, Dr. Booth noted that Ms. Roberts would greatly benefit from a series of L5-SI injections. He opined that the treatment was reasonable and necessary for her work injury. He stated that he agreed with Dr. Sakla, who originally recommended the injections. Dr. Booth asserted in a medical statement that Ms. Roberts had experienced ongoing problems with her lower back since November 17, 2009, and has continued to be treated by Dr. Sakla since that time. He requested a lumbar MRI. In a July 19, 2013, letter, Dr. Booth again

4

noted that Ms. Roberts has continued to be treated for lower back pain since 2009. He noted that she continued to be treated by Dr. Sakla and that she needed an evaluation with him for possible further injections. He also requested chiropractic visits. On August 20, 2013, he opined that the current symptoms are likely the result of a combination of both the 2002 and 2009 injuries.

In an August 5, 2013, physician review, James Dauphin, M.D., was asked whether a new lumbar MRI and six additional chiropractic visits should be authorized. Dr. Dauphin found no evidence that Ms. Roberts was worse due to the 2009 sprain. He determined that the symptom worsening she was experiencing was most likely unrelated to the sprain. He recommended that the request for an MRI and chiropractic visits be denied. On August 12, 2013, the claims administrator denied authorization of a lumbar MRI, chiropractic treatment, and a referral to Dr. Sakla in the 2009 claim. The claims administrator again denied a lumbar MRI, chiropractic treatment, and a referral to Dr. Sakla on October 4, 2013. On October 28, 2013, it denied a lumbar MRI and, in a separate decision, it also denied reopening the 2009 claim for additional impairment.

On January 14, 2014, the West Virginia Supreme Court of Appeals affirmed a May 25, 2012, Board of Review decision in the March 1, 2002, claim denying a request for sacroiliac injections. We found that the injections were necessitated by the November 17, 2009, injury.

Treatment notes from Ohio Valley Medical Center Emergency Trauma Unit dated March 12, 2014, indicate Ms. Roberts was in a motor vehicle accident. She struck the back of her head and had pain in her neck, head, and lower back. She was diagnosed with acute cervical sprain, head contusion, and thoracolumbar sprain and sent home with medication. Physical therapy treatment notes indicate Ms. Roberts was evaluated for lumbago and cervicalgia due to a motor vehicle accident. She underwent therapy from April 9, 2014, through July 28, 2014.

On June 2, 2014, the Office of Judges affirmed claims administrator decisions dated August 29, 2013; October 31, 2013; and November 12, 2013, which denied treatment and reopening of the claim. In that case, the employer argued that Ms. Roberts's request should be denied because no new evidence was presented in support.

In a June 2, 2014, independent medical evaluation, Dr. Langa noted Ms. Roberts was seen in reference to the November 17, 2009, work injury. Dr. Langa noted that she is in agreement with the denials for additional treatment and diagnostic testing. Ms. Roberts has a long standing history of chronic lumbar post laminectomy/failed back syndrome following a 2002 work injury and subsequent surgeries. She also has age related lumbar degenerative disc/joint disease. Ms. Roberts reported that her symptomology had been slowly progressing over time. Dr. Langa opined that the progression was not due to the lumbosacral sprain sustained on November 17, 2009. Further, Dr. Langa stated that there is no indication for the 2009 claim to be reopened for additional permanent partial disability. Ms. Roberts suffered a motor vehicle accident in 2014 after which she had increased lower back pain and she reported that her lower back remained aggravated from the accident.

5

In a September 8, 2014, evaluation report, Dr. Langa opined that Ms. Roberts has chronic lumbar post laminectomy/failed back syndrome following two surgeries performed due to the March 1, 2002, injury. She has been continuously symptomatic since that injury with chronic complaints of left-sided lower back/buttock discomfort with intermittent radiation into the left leg. Dr. Langa opined that her current complaints ultimately related to the 2002 injury and not the 2009 injury. Dr. Langa noted that Ms. Roberts was treated from the time of the 2002 injury up to and beyond the 2009 injury. Dr. Langa stated that she merely suffered sprains/strains on November 17, 2009, and any treatment for of chronic lumbar post laminectomy/failed back syndrome is ultimately for the March 1, 2002, injury. She opined that chronic pain management would be appropriate but no further treatment beyond that was required.

On November 10, 2014, the West Virginia Supreme Court of Appeals denied a further permanent partial disability award in the November 17, 2009, claim. On November 4, 2015, the Court denied chiropractic visits, a lumbar MRI, referral to Dr. Sakla, a consultation with Mark Grubb, M.D., and reopening of the 2002 claim for additional permanent partial disability because they were determined to be necessitated by the November 17, 2009, injury

On March 27, 2015, the Office of Judges affirmed the claims administrator's October 4, 2013, and October 28, 2013, decisions denying a lumbar MRI, chiropractic treatment, referral to Dr. Sakla, and reopening for additional impairment in the November 17, 2009, claim. The Office of Judges noted that prior Office of Judges' Orders have found that a compensable injury occurred on November 17, 2009, which caused additional low back problems for which Ms. Roberts required treatment. The compensable conditions in the 2009 claim are lumbar strain, sacroiliac strain, and sacrum strain. The prior treatment authorized by the Office of Judges was determined to be due to the new injury of November 17, 2009, although the injury was superimposed upon chronic low back problems that Ms. Roberts developed as a result of the March 1, 2002, injury. The Office of Judges concluded in the instant case that the medical records now demonstrate that her current problems are not a result of the November 17, 2009, compensable injury. Dr. Langa's September 8, 2014, findings, that the sprain/strains that were found compensable in the subject claim are no longer causing Ms. Roberts's symptoms, were found to be credible. The request to reopen the claim on a permanent partial disability basis was also denied. The only evidence attached in support of the request was Dr. Booth's treatment records, which made no impairment recommendation. The Office of Judges found no evidence in the record that demonstrates Ms. Roberts has suffered a progression of her disability above that already granted.

On May 11, 2016, the Board of Review affirmed the March 27, 2015, Office of Judges' Order insofar as it denied the request to reopen the claim for additional permanent partial disability. The Board of Review reversed the Office of Judges insofar as it denied a lumbar MRI, chiropractic treatment, and referral to Dr. Sakla and authorized the requests. The Board of Review found that Ms. Roberts suffered a compensable injury on March 1, 2002, after which two lumbar surgeries were performed. On November 17, 2009, she suffered another lower back injury which was eventually held compensable. The Board of Review took note of a July 26, 2011, Office of Judges' Order which added sacroiliac strain as a compensable condition in the

2009 injury and affirmed a denial of a request for chiropractic treatment. On August 29, 2012, the Office of Judges authorized sacroiliac joint injections. The Office of Judges held that though Ms. Roberts had significant prior back problems, the November 17, 2009, injury caused the need for additional treatment and her symptomology greatly increased after the 2009 injury. The Board of Review also found that on July 15, 2013, Dr. Booth reported that Ms. Roberts has had ongoing problems with the lower back since the 2009 injury and needs a new MRI of the lumbar spine. On July 19, 2013, Dr. Booth requested six chiropractic visits and referral to Dr. Sakla for possible further injections. After reviewing the evidence, the Board of Review concluded that the lumbar MRI, chiropractic treatment, and referral to Dr. Sakla are medically necessary and reasonably required treatment for the November 17, 2009, injury.

After review, we agree with the reasoning and conclusions of the Board of Review. The medical evidence indicates that Ms. Roberts's current symptoms are a result of the November 17, 2009, compensable injury. Per Dr. Sakla's September 8, 2008, treatment note, Ms. Roberts's pain had improved at least 95% following her March 1, 2002, injury. Dr. Sakla therefore recommended deferring further injections unless needed. After the November 17, 2009, injury, she again suffered back pain and both Dr. Sakla and Dr. Booth recommended lumbar spine injections to treat the injury. Additionally, this Court has previously found in Case Numbers 12-0784 and 15-0058 that a request for lumbar spine injections, chiropractic visits, a lumbar MRI, and a referral to Dr. Sakla were necessitated by the November 17, 2009, injury, not the March 1, 2002, injury. The Board of Review was also correct to affirm the Office of Judges' denial of a reopening of the claim for additional permanent partial disability. The only evidence attached in support of the request was Dr. Booth's treatment records, which made no impairment recommendation.[2]

On November 2, 2015, the Office of Judges affirmed the claims administrator's December 5, 2014, decision denying a petition to reopen the claim for medical treatment and denied a request to add post-laminectomy failed back syndrome to the claim. It found that Ms. Roberts sustained a serious work-related back injury on March 1, 2002, that necessitated two lumbar surgeries. On November 17, 2009, she suffered another compensable lower back injury. At that time, she was not having any problems from her 2002 injury and had not had treatment for the lower back for some time prior to the 2009 injury. Following the 2009 injury, Ms. Roberts required treatment for a fairly long time. The Office of Judges found that Dr. Langa concluded that her current problems were chronic pain as a result of post-laminectomy/failed back syndrome and degenerative changes, as well as an aggravation of her pain due to a 2014 motor vehicle accident. The Office of Judges determined that Dr. Langa's opinion was correct. Ms. Roberts's current problems were found to be primarily due to her 2002 compensable injury and subsequent surgeries. It was found that she does now suffer from post-laminectomy/failed back syndrome. However, the Office of Judges found that, as noted in a prior June 30, 2015, Order, the petition to reopen the claim to add post-laminectomy/failed back syndrome to the claim is time barred, as is the request for additional treatment.

---

[2] On July 7, 2016, Ms. Roberts filed a motion to apply collateral estoppel in her November 17, 2009, claim. That motion has been rendered moot by this Court's decision.

The Office of Judges stated that the claim was closed on a medical treatment basis. The record shows that Ms. Roberts was last treated on September 2, 2008, by Dr. Sakla for the 2002 injury. Therefore, in accordance with West Virginia Code §23-4-16(a)(4) (2005), Ms. Roberts could have been authorized to receive treatment within five years of that date. On December 28, 2009, Dr. Sakla saw her for recurrent back pain, but he found it was due to the 2009 injury. The Office of Judges concluded that the request for additional treatment was not timely filed since it was not made within five years of the last significant treatment for the subject claim. In regard to the request to add post-laminectomy/failed back syndrome to the claim, the Office of Judges found that the request must be made within five years of the initial permanent partial disability award. In the 2002 claim, Ms. Roberts received a 13% permanent partial disability award in 2005. She therefore had until 2011 to request the addition of post-laminectomy/failed back syndrome to the claim. The Office of Judges concluded that the request in this case is untimely and was properly denied. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 11, 2016.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The evidence shows that her requests for additional treatment and the addition of post-laminectomy/failed back syndrome to the claim were properly denied as they were time barred.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 5, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Margaret L. Workman